# EXHIBIT 1

## OPERATING AGREEMENT
## OF
## KAMIN HEALTH Williamsburg LLC

AGREEMENT, made this 4 day of October, 2018 (with an effective date as of the 4th day of October 2018), by and between U C Management LLC ("Kamin") with an address at 72-53 141st Street Flushing New York 11367; PINCHAS HALPERIN LLC ("Halperin") with an address at 47 Throop Avenue Brooklyn New York 11206; (hereinafter Kamin and Halperin collectively referred to as "Members").

### WITNESSETH:

WHEREAS, the Members own all of the ownership interest in Kamin Health Williamsburg LLC ("LLC");

WHEREAS, the Members hereto believe that it is in their best interest to set forth their respective rights and obligations with respect to the operation and management of the LLC in order to secure continuity and stability of policy and management of the LLC and to make provision with respect to the future transfer or other disposition of a Member's Membership Interest in order to maintain the Membership Interest in the hands of the Members participating in the ownership of the LLC, and

WHEREAS, the Members hereto desire to promote their mutual interests and the interests of the LLC by imposing certain restrictions and obligations on themselves, the LLC, and the Membership Interest and agree that their execution of this Agreement would be in the best interest of the LLC and would promote a harmonious relationship between themselves,

NOW, THEREFORE, in consideration of the mutual agreements and covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by all Members, and the Members intending to be legally bound hereby, it is mutually agreed by and between the Members to this Agreement as follows:

### 1. Formation

The Members hereby confirm that they caused to be formed the LLC, a limited liability company, pursuant to the provisions of the New York Limited Liability Company Law of the State of New York ("LLCL"), by the filing of Articles of Organization with the New York State Department of State, on September 17, 2018, for the purposes and the period and upon the terms and conditions hereinafter set forth and the Members hereby agree to execute, acknowledge, and file any other documents as required under applicable law.

### 2. Name

The name of the LLC is as provided above, and all business of the LLC shall be conducted under said name, or such other name as the Members from time to time may determine.

### 3. Purposes

The purposes for which the LLC was formed is to engage in the business of providing the full spectrum of management services for a medical practice that provides adults and children with urgent medical services and care for non-life threatening and/or temporary injuries and illnesses and other medical conditions on a "walk-in" basis ("Business") and to enter into and perform contracts and agreements of any kind necessary to, in connection with or incidental to, the Business of the LLC and/or as the Members in their discretion may deem desirable.

### 4. Place of Business

The principal place of business of the LLC shall be located at the second floor at 70 Lee Avenue, Brooklyn, New York, 11211 ("Business Premises"), and/or at such other or additional places of business and/or offices within the State of New York as the Members from time to time may designate.

### 5. Term

The term of the LLC shall commence on the filing of the Articles of Organization of the LLC, and the latest date on which the LLC is to dissolve is as required by the LLCL, unless said date is extended by amendment of this Agreement or the LLC is sooner terminated in accordance with this Agreement.

### 6. Members

The percentage membership interest ("Membership Interest") of each Member in the LLC is as follows:

| Member Name: | Membership Interest: |
|---|---|
| U C Management LLC | 50% |
| Halperin | 50% |

Each Member hereby confirms that such Member has subscribed to purchase the Membership Interest set forth opposite such Member's name and that such Member has purchased such Member's Membership Interest. The LLC acknowledges and accepts the subscription of each Member for each such Member's Membership Interest.

The Members intend that the LLC be classified as a partnership for federal income tax purposes. The Members shall take all steps as may be required to maintain the LLC's classification as a partnership for federal income tax purposes and no Member shall take a position inconsistent with the foregoing.

### 7. Management and Operation of the LLC

Except as otherwise provided in this Agreement, the Business affairs and operations of the LLC shall be managed and controlled by a manager, who shall have the exclusive and full power with respect to such management and control. The Members hereby designate Yitzchak Kaminetzky as the manager ("Manager"). Except as otherwise provided herein, the Manager shall have such power and authority as provided in the LLCL. The Manager shall not be liable for the debts, liabilities, contracts or any other obligations of the LLC, except as otherwise provided by law. In the event the Manager resigns or is unable or unwilling to serve as Manager of the LLC, Kamin shall have the absolute authority to designate the substitute manager but agrees, in good faith, to listen to the input of Halperin into the selection of such substitute manager. In the event the Manager does not resign after committing any felony act or is involved in any crime of fraud, theft or moral turpitude or pleads nolo contendre to any such charge, or commingles Company funds with non-Company funds, or surrenders his license to operate an urgent care business, such Manager shall be removed as Manager and Member upon motion of any Member.

Notwithstanding the above, the consent of the Members holding at least sixty-six (66%) of the Membership Interest shall be required with respect to all decisions affecting the substantive Business affairs and/or operations of the LLC, such as, sale of the assets of the LLC out of the ordinary course of business; obtaining financing; changing or adding to the principal place of business of the LLC; addition of new members; designation of the LLC bank accounts; designation of the LLC's accountants and the like.

Subject to the above, only the Manager may execute, for and on behalf of the LLC, leases, contracts, promissory notes, or other legal documents, all of which

3

instruments when so executed by the Manager shall be valid and binding upon the LLC without any liability or obligation on the part of any third party to see the application of any money or property paid or delivered or the authority of the signatory Manager to so act.

Notwithstanding anything contained herein to the contrary, the Manager shall not be liable to the LLC or to the Members for any act or omission based upon honest errors of judgment, negligence or other fault in connection with the business or affairs of the LLC or and was taken or omitted in good faith upon a belief it was in the best interest of the LLC and only for action or omission that constitutes fraud, bad faith, or intentional misconduct.

Simultaneously herewith, the LLC shall enter into an agreement with Precious Care Management LLC ("PCM"), a company owned by Kamin, to provide management services to and on behalf of the Business. Such services shall be as set forth on Schedule A, annexed hereto and made a part hereof. For the services provided by PCM in accord with said agreement, PCM shall be entitled to receive a management fee of 7.5% of the Gross Revenue of the LLC, payable monthly. Gross Revenue shall mean revenue from all sources generated by the LLC from the operation of its Business. Except as otherwise determined by the Members the term for the PCM agreement shall be for so long as Kamin owns its membership interest in the LLC.

## 8. Capital Contributions/Loans

Simultaneously upon execution of this Agreement Halperin has made an initial capital contribution to the LLC in the amount of up to $500,000 for working capital, as needed by the LLC (the "Initial Capital Contribution"). In addition, simultaneously upon execution of this Agreement the LLC is entering into a Lease Agreement for the Business Premises with Lee Avenue Estates LLC ("Owner"), the owner of the building/property in which the Business Premises is located and which is owned by Halperin. Halperin shall manage and supervise the "build out" required to be performed by the Owner under and pursuant to the Lease Agreement (the "Build-Out"). The Build Out shall not include signage; cabinetry and furniture the cost of which shall be the responsibility of the LLC. Halperin agrees to provide his personal financial statements and both Halperin and Kamin a personal guaranty in order to assist the LLC in obtaining financing or leasing of (i) equipment and/or machinery for use by the LLC in the operation of its Business and (ii) working capital. Kamin shall ensure that PCM provides the services set forth on Schedule A in order to ensure that the LLC is up and running at such time as agreed upon for the commencement of the LLC Business. In addition, Kamin shall contribute the license to the use of the brand name "Kamin Health" by the LLC, at no cost, which license shall continue for so long as Kamin owns its membership interest in the LLC.

4

Notwithstanding anything contained herein to the contrary, the failure by Halperin to make the entire required Initial Contribution and the complete "build out" required to be performed by the Owner under and pursuant to the Lease Agreement, shall constitute an event of default by Halperin under this Agreement. In such event and regardless of the amount actually contributed, Halperin shall not be entitled to claim a pro rata Membership Interest (based upon the amount actually contributed) but shall forfeit his entire Membership Interest. The Members acknowledge and understand that the aforesaid remedy is fair and reasonable as it is the intent of the Members that the Membership Interest granted herein is in consideration of the full compliance by each Member with his undertaking, financial and otherwise, provided above and that the failure to fully and completely comply with said undertaking will leave both the other Members and the LLC without an adequate remedy.

In the event that at any time funds in excess of (i) Capital Contributions made by the Members and (ii) other receipts of the LLC, are required to pay all or any part of the operating costs, obligations, liabilities or expenditures of the LLC or for the benefit of the LLC, as determined by the Manager, in his sole and absolute discretion, then in such event, the Members agree to first attempt to obtain such funds from traditional financing through a lending institution. In the event traditional financing cannot be obtained or additional funds over the amount obtained are necessary, each Member shall contribute such additional amount in proportion to their respective Membership Interest. In the event a Member does not contribute such required additional funds, the other Members may elect to loan such funds to the LLC in proportion to their respective Membership Interest. Any such loan by a Member shall not increase such Member's Capital Contribution and shall not entitle such Member to any increase in the Member's Membership Interest or his share of the distributions of the LLC. The amount of any such loan shall be an obligation of the defaulting Member and shall bear interest at the rate of twelve (12%) percent per annum and the principal balance of such loan with accrued interest shall be repaid by the defaulting Member and, if not sooner paid, shall be repaid from the amount of any payment otherwise available to be made to the defaulting Member from the distributions as provided in Section 9 below, until all such amounts shall have been repaid in full. The parties shall execute a Shtar Heter Iska in connection therewith and for all amounts of interest or Halachically determined interest to be paid hereunder.

Except as specifically provided otherwise in this Agreement or required by law, no Member shall have the right to withdraw or reduce his Capital Contribution to the LLC until the termination of the LLC. No Member shall have the right to demand and receive any distribution from the LLC in any form other than cash, regardless of the nature of such Member's Capital Contribution. No Member shall be paid interest on Capital

5

Contributions to the LLC. Except to the extent required to guaranty Company debt, no Member shall be obligated to restore any negative Capital Account.

### 9. Allocations and Distributions

As used in this Agreement, the terms "net profits" and "net losses" shall mean the profits or losses of the LLC from the conduct of the LLC's Business, after all expenses incurred in connection therewith have been paid or provided for. The net profits or net losses of the LLC shall be determined by the LLC's accountants in accordance with generally accepted accounting principles applied in determining the income, gains, expenses, deductions or losses, as the case may be, reported by the LLC for federal income tax purposes and allocated to each Member in proportion to their respective Membership Interest.

Distributions may be made to the Members from the LLC, from time to time, from the Available Cash, as determined by the Manager, The Available Cash shall be determined by the Manager, taking into account any factors that the Manager deems relevant, including, without limitation, the reasonably anticipated financial needs of the LLC for working capital and the establishment of or addition to a two month reserve. In no event will distributions be made until the Manager determines that such Available Cash is available above and beyond the LLC's debts and expenses. Notwithstanding anything contained herein to the contrary including each Member's respective Membership Interest, until such time as Halperin receives the return of its Initial Capital Contribution, eighty (80%) percent of the amount of the distribution shall be made to Halperin and twenty (20%) percent to Kamin. Thereafter, sixty (60%) percent of the amount of the distribution shall be made to Halperin and forty (40%) percent to Kamin.

### 10. Books, Records and Tax Returns

At all times during the continuance of the LLC, the Manager shall keep or cause to be kept complete and accurate records and books of account in which shall be entered each transaction of the LLC in accordance with generally accepted accounting principles. All such books and records shall be, at all times, maintained at the LLC's principal place of Business and/or the office of the LLC's accountant. For the first year after the LLC commences operations, the LLC shall employ a bookkeeper, at a salary based upon such bookkeeper's hours and duties and the amount paid by Kamin for such services in other facilities, which is [ADD AMOUNT]. Such bookkeeper shall be designated by Halperin. Said Bookkeeper shall provide reasonable and customary monthly financial reports to the Members and the Manager and shall meet with the Manager to discuss/review such reports upon reasonable notice and time.

6

Any Member or his designated representative shall have the right, upon reasonable notice and at any reasonable time, to have full access to, and inspect and copy the contents of such books or records, at such Member's sole cost and expense.

The Accountant for the LLC shall be as determined by the Members from time to time. The Accountant shall prepare or cause to be prepared all Federal, State and local income tax and information returns for the LLC, and shall cause such tax and information returns to be filed timely with the appropriate governmental authorities. The LLC shall timely forward to each person who was a Member during the preceding fiscal year a true copy of the LLC's information return (form K-1) filed with the Internal Revenue Service for the preceding fiscal year. The LLC will pay the accounting fees. Unless required by the Business or by law the Company's financial results shall be unaudited.

Kamin shall be the "Partnership Representative" of the Company, within the meaning set forth in Section 6223 of the Internal Revenue Code of 1986, as amended (the "Code") as in effect as of January 1, 2018, except to the extent that Kamin does not qualify as a Partnership Representative for purposes of the Code, in which case Halperin shall be the Partnership Representative. The Manager shall, in his sole discretion, determine whether to make on behalf of the Company any and all elections and shall have the right to take any and all actions that are available to be made or taken by the Manager, the Partnership Representative or the Company under Subchapter C of Chapter 63 of the Code.

## 11. Bank Account

All funds of the LLC shall be deposited solely in the LLC's name in JPMorgan Chase Bank or such other bank account(s) as shall be designated from time to time by the Members. Kamin, Halperin and a person employed by PCM, as designated by the Manager, shall be the only signatories on all LLC bank accounts. Withdrawals from any such bank account shall be made only in the regular course of business of the LLC and shall require the signatures of any one of the above. Each Member shall have full access to the LLC's online bank account information.

## 12. Company Property

All property, tangible and intangible, real and chattel, owned by the LLC including but not limited to its website and any trademark that the LLC may obtain shall be owned by the LLC as an entity. Insofar as permitted by applicable law, no Member shall have any ownership interest in any LLC property in his individual name or right. Each Member's Membership Interest in the LLC shall be personal property for all purposes.

## 13. Transfer of Membership Interest

No Member shall, directly or indirectly, sell, donate, dispose of, grant a security interest, mortgage, encumber, pledge, assign or otherwise transfer for financing purposes, collateral for performance of any obligation or otherwise, (hereinafter collectively referred to as "Transfer") all or any portion of his Membership Interest without first obtaining the consent, in writing, of the other Member.

Any Transfer which is not in compliance with the provisions of this Agreement shall be null and void, and shall not be recognized by the LLC or the Members, and the transferee shall not be entitled to vote any of the Membership Interest of the LLC, nor receive any dividends, profits or other distributions, nor shall the transferee have any other rights as a Member of the LLC.

(I) **Voluntary Transfer of Membership Interest During Lifetime:**

Notwithstanding the above, a Member may during his lifetime assign/transfer his Membership Interest to his spouse, child, or spouse of his child, parents or in-law parents, or grandchildren (or an entity, a trust or custodial account for himself or for the benefit of such person), or without the consent of the other Members provided he continues to vote his Membership Interest.

Except as otherwise provided in Provision 8 herein to the contrary, if a Member desires to withdraw as a Member of the Company ("Withdrawing Member") he shall first submit to the other Member ("Remaining Member"), in writing, a notice of his desire to withdraw as a Member which notice shall set forth the price and detailed terms by which the Remaining Member may purchase all of the Withdrawing Member's Membership Interest ("Option Notice"). Within thirty (30) days after the giving of the Option Notice, the Remaining Member shall advise the Withdrawing Member of his/its election to purchase all of the Withdrawing Member's Membership Interest under the same price and terms as set forth in the Option Notice. In the event the Remaining Member does not (a) elect to purchase all of the Withdrawing Member's Membership Interest, or (b) fails to advise the Withdrawing Member of his election to purchase all of the Withdrawing Member's Membership Interest within thirty (30) days after receipt of the Option Notice, or (c) fails to close on the purchase of the Withdrawing Member's Membership Interest, as required herein, the Withdrawing Member may transfer all of his Membership Interest to any third party under the exact same price and terms as set forth in the Option Notice. The closing of the purchase by third-party of all of the Withdrawing Member's Membership Interest shall take place within sixty (60) days from the said thirtieth (30th) day of the Option Notice. If the sale is concluded with the third-party, within the time provided above, than the third-party Transferee shall be bound by, and shall be entitled to

the benefits of, all of the terms and conditions of this Agreement with the same force and effect as if the third-party is a party to this Agreement. If the Withdrawing Member shall fail to effectuate the sale of his Membership Interest to a third party within the time provided above, the Withdrawing Member must submit a new Option Notice to the other Member, in accord with the procedure set forth above.

(II) <u>**Involuntary Transfer of Membership Interest During Lifetime:**</u>

Any person ("Involuntary Member") who becomes holder or possessor of all or any portion of the Membership Interest of a Member by virtue of including, but not limited to, any judicial process, attachment, bankruptcy, receivership, execution, a transfer in a matrimonial action (regardless of whether such transfer is deemed voluntary or involuntary), shall immediately offer all of the Membership Interest held or possessed by the Involuntary Member to the LLC and the LLC shall have the option to purchase all of such Membership Interest of such Member's Membership Interest as provided below.

(III) <u>**Transfer of Membership Interest on Death:**</u>

Upon the death of a Member (the "Deceased Member"), the surviving Member(s) (the "Surviving Members") on a pro <u>rata</u> basis, or the LLC, may purchase and the estate or heirs of the Deceased Member, as the case may be, may sell to the Surviving Members or LLC all of the Membership Interest then owned by the Deceased Member. In the event neither the LLC nor the Members are willing to purchase the offered Membership Interest, the transfer to the estate/heir(s) shall be effective, and such person or persons shall be admitted as a single entity, provided that one person be designated as sole representative of such Membership Interest.

## DETERMINATION OF PURCHASE PRICE

For the purpose of Provision (II) and (III) above, the purchase price for the respective Membership Interest shall be determined by the greater of (a) a bona fide third party offer; and (b) the "Fair Market Value" of the Selling/Involuntary/Deceased Member's Membership Interest, as applicable, as determined by written appraisal from an appraiser selected and paid for by the LLC, in either event increased by a bonus (the "Bonus") of ten percent (10%). In determining the Fair Market Value the appraiser shall be guided by the factors set forth in IRS Revenue Ruling 59-60, as modified and amplified. If the Selling/Involuntary/Deceased Member does not agree with the appraisal obtained by the LLC then the Selling/Involuntary/Deceased Member shall obtain a written appraisal of the Fair Market Value of the Membership Interest from a second appraiser selected and paid for by the Selling/Involuntary/Deceased Member. The two appraisers shall then jointly determine the Fair Market Value of the Membership Interest. If the two

appraisers cannot agree upon the Fair Market Value, then the two appraisers shall jointly select a third appraiser, whose fee shall be paid equally by the LLC and Selling/ Involuntary/Deceased Member. The third appraiser shall then select which of the two original written appraisals is closest to the actual Fair Market Value, it being understood that the third appraiser must choose one of the two valuations previously made. The Closing of such purchase and sale shall take place on the sixtieth (60th) day following such acceptance, at the principal office of the LLC, or such other time, place and/or method as the parties shall mutually agree. In the event the Non-Selling Member decides to pay the entire Purchase Price at Closing, the amount shall be discounted by the amount of the Bonus; otherwise, the Purchase Price shall be repayable to the Selling Member in twenty (20) equal consecutive quarter-annual payments. In the event of the installment payment option, the Purchase Price to be paid shall be evidenced by a Note of the Non-Selling Members or the LLC, as the case may be. The Note shall bear interest at a rate per annum equal to five percent (5%). The Note shall provide that in the event of default in the payment of principal or interest, all payments subsequently due shall become due and payable immediately and shall contain a provision that it is subject to prepayment without penalty, in whole or in part, at any time, and, in the event the Membership Interest are purchased by the Non-Selling Members, the Note shall be guaranteed by the LLC. The Selling Member shall be entitled to a security interest in all of the assets of the LLC.

### 14. Restrictive Covenants

Non-Solicitation: No Member shall, during the period he owns his Membership Interest and for a period of two years after the transfer of his Membership Interest (whether as a result of one of the events provided in Provision 12 above or as a result of dissolution of the LLC), directly or indirectly, either for himself or any other party, call upon, solicit, divert, take away or attempt to do so, any individual who is an employee of the LLC or has been an employee of the LLC at any time during the six (6) month period prior to such solicitation, without the written consent of all the Members.

Not to Compete: No Member shall, during the period he owns his Membership Interest and for a period of two years after the transfer of his Membership Interest (whether as a result of one of the events provided in Provision 12 above or as a result of dissolution of the LLC), participate, directly or indirectly, in the ownership, management, operation or control or be employed by, work for, consult for, for remuneration or otherwise, finance or invest in any business which is in any way in competition with the Business of the LLC or will be in competition with the Business of the LLC or in the urgent health care business as described in Provision 3 above. The Members acknowledge that considering the nature of the LLC's Business and the

business to which it supplies its management services, the above restriction shall be limited to a six (6) block radius of the Business Premises and same is fair and reasonable.

<u>Remedies Upon Breach or Attempted Breach:</u> The Members hereto understand and consent that this Provision and the covenants and conditions contained herein are important and material and that there is no adequate remedy at law for any breach or attempted breach of this Provision and the LLC shall be entitled to injunctive relief including the issuance of a temporary restraining order, without prior notice, to prevent the continued breach or attempted breach of any of the terms and conditions of this Provision. In addition to the above, the party breaching or attempting to breach this Agreement agrees to be liable to pay the LLC's damages, including but not limited to, compensatory, incidental and consequential damages as well as reasonable attorneys fees and costs in connection with any action for enforcement of this Provision or arising out of the breach or attempted breach of any of the terms and conditions of this Provision. The above listed remedies that were undertaken by each Member, despite the fact that they include GRAMA and GARMI damages which are inherently indirect by nature, were nevertheless undertaken, by a KINYAN SUDER (an act of contract carried out by transferring a handkerchief from the recipient to the donor) to evidence the personal obligation of such Member. The undertakings relating to remedies upon breach or attempted breach of contract will accrue MAYACHSHAV from the date of the signing of this Agreement (i.e., LIMAFRAYAH to such date), and there is an acknowledgement of all parties that the undertaking of these obligations was done in front of a BAIS DIN CHOSHUV (a beth din of importance) and that this SUDER was undertaken DELO K'ASMACHTA (not like a promise that was obviously made without the intent to be fulfilled and which therefore, possesses no legal validity) as elucidated in CHOSHEN MISHPAT Chapter 207.

### 15. Indemnification

The LLC will indemnify, hold harmless, advance expenses to and pay all judgments and claims against each Member and/or Manager relating to any liability or damage incurred by reason of any act or omission by such Member or Manager in connection with the Business of the LLC, including, without limitation, the cost of investigation and attorneys' fees incurred by such Member and/or Manager in connection with the defense of any action based on any such act or omission, which attorneys' fees will be paid as incurred, including, without limitation, all such liabilities under federal and state securities laws (including, without limitation, the Securities Act) to the maximum extent permitted by the Act.

Each Member will indemnify, defend and hold harmless the LLC, the other Members and the Manager against all claims and all damages and costs of any nature (including,

11

without limitation, the cost of investigation and attorneys' fees) incurred by any of them as a result of any fraud, bad faith, gross negligence, intentional misconduct, a knowing violation of the law or breach of this Agreement by any Member, Manager or officer. Notwithstanding the foregoing, if an indemnification obligation arises from damages sustained by a party (as opposed to a third party), then the indemnification obligation will not include the obligation to defend.

To the extent that any Member (the "Member Guarantor") has in the past or undertakes in the future, individual, joint and several liability for any debt, liability or other obligation of any of the LLC's obligations ("LLC Obligation") the Members agree to assume and undertake liability for such LLC Obligation in proportion to the Member's Membership Interest (a Member's "Proportionate Share"). The same shall apply for any amounts incurred or paid by a Member or other value given by or recovered from a Member as a result of an LLC Obligation.

The following contribution rights shall govern among the Members:
A Member (in any applicable circumstances the "Indemnitor") shall indemnify, save and hold harmless the other Member Guarantor from and against (and will pay when and as due and payable but in any event upon demand made) all liabilities, debts, claims, demands, judgments or other obligations paid, incurred, threatened or collected from a Member Guarantor in excess of the Member's Proportionate Share of such liabilities, debts, claims, demands, judgments or other obligations.

It is the purpose and intent of this provision that each Member bear whatever sums or other value are paid or incurred by or collected from any Member in the aggregate in proportion to such Member's respective Proportionate Share regardless of whether the amount paid or incurred by or collected from any Member is discharged as against the Indemnitor as a result.

The Member Guarantor shall be entitled to recover from Indemnitor all legal costs or expenses, including attorneys' fees incurred by him to enforce such his rights hereunder, or to collect any sums due from Indemnitor hereunder.

### 16. Dissolution/Partition

The Manager shall have the sole authority to dissolve and commence winding up and the liquidation of the LLC. No Member will, either directly or indirectly, take any action to require partition, file a bill for accounting or appraisement of the LLC or of any of its assets or properties or cause the sale of any property, and, notwithstanding any provisions of applicable law to the contrary, each Member (and each of his, her or its legal representatives, successors, or assigns) hereby irrevocably waives any and all rights he, she or it may have to maintain any action for partition or to compel any sale with respect

to his, her or its membership Interest, or with respect to any assets or property, except as expressly provided in this Agreement.

### 17. Arbitration

Any and all controversy, claim, dispute, etc., in any way relating to, arising under or resulting from this Agreement shall, in accord with Jewish Law, be submitted for arbitration to Bais Hora'ah Etz Chaim in Brooklyn, New York, under the leadership of Harav Chaim Kohn or as mutually agreed otherwise ("Rabbinical Court") and not to any secular court, tribunal or the like except upon written permission of said Rabbinical Court. The Rabbinical Court may award monetary damages or direct specific performance or allow such other remedy as it may deem appropriate including the issuance of an "IKEL" and such Rabbinical Court's decision/order/award (collectively "Award") shall be final and binding on the parties. The rules and conduct of said arbitration proceedings shall be as determined by said Rabbinical Court, in its sole and absolute discretion, except if expressly prohibited by law. The cost for said Rabbinical Court proceedings shall be borne equally by the parties unless said Rabbinical Court directs otherwise. Judgment upon the Award rendered may be entered in any court having jurisdiction thereof.

### 18. Limited Liability Company Laws

It is the intention of the Members that this Agreement shall be the sole source of agreement of the parties, and, except to the extent a provision of this Agreement provides for the incorporation of federal income tax rules or is expressly prohibited or ineffective under the LLCL, this Agreement shall govern even when inconsistent with, or different from, the provisions of any applicable law or rule. To the extent any provision of this Agreement is prohibited or otherwise ineffective under the LLCL, such provision shall be considered to be ineffective to the smallest degree possible in order to make this Agreement effective under the LLCL. If the LLCL is subsequently amended or interpreted in such a way to make any provision of this Agreement that was formerly invalid, such provision shall be considered to be valid form the effective date of such interpretation or amendment. To the extent a matter is not covered in this Agreement, the LLCL and/or any applicable provision in the Internal Revenue Code shall govern as if fully set forth in this Agreement.

### 19. Miscellaneous

(a) <u>Independent Activities:</u> The Members acknowledge that Kamin has, in addition to other activities and business interests, other urgent health care centers in which he/it is involved in the management of or otherwise. The Manager shall be

13

permitted to engage in such other business activities and interests provided it does not materially impair his ability to render the services to the LLC under and pursuant to this Agreement. Except as otherwise prohibited in Article 14 herein, each Member may engage in whatever business activities and interests he/it chooses and do so without having to offer the opportunity to the LLC prior to engaging in such activity, whether or not such activity/interest is the same business as the Business or the providing of health care services, or having or incurring any obligation to offer any form of participation in and to such activities/interests to the LLC or to any Member.

(b) <u>Applicable Law and Court:</u> Except as otherwise provided in Article 17 above or as required by law, this Agreement and its validity, interpretation, performance and enforcement shall be governed and construed in accord with the laws of the State of New York as governed by Halacha as interpreted by the Rabbinical Court, without regard to the conflict of law provisions thereof, and judgment upon the award rendered or regarding enforcement of the Rabbinical Court's rulings may be entered or enforced, as the case may be, in the Courts located in the State of New York, County of Kings, and each party agrees to submit to the jurisdiction and venue of said court.

(c) <u>Notices:</u> Any notice, request, demand, service of process, or other communication given, or required to be given, pursuant to this Agreement, shall be in writing and shall either be (i) personally delivered, (ii) sent via overnight delivery by a reputable commercial courier providing overnight delivery service (FedEx, UPS, and the like) or (iii) sent via email or facsimile during regular Business Hours and either sent via the method identified in (i) and (ii) above, or mailed via first class mail, postage prepaid, on the same day as the email or facsimile is sent and shall be deemed to have been given upon receipt if delivered pursuant to (i) above, or one (1) Business Day after it is dispatched to such overnight delivery service pursuant to (ii) above, or two (2) Business days after it is sent in accord with (iii) above, in any such case addressed to the party to receive said notice at the address set forth below. Any party may, by giving notice to the other in the manner set forth above, change the address/facsimile number to which notices shall be sent to it, provided that any such change of address shall be effective three (3) Business Days after it is deemed given, as set forth above.

(d) <u>Enforceability:</u> If any provisions or any portion thereof of this Agreement is found to be void or unenforceable, the remaining provisions or any portion thereof of this Agreement shall remain binding and in full force and effect.

(e) <u>Modification:</u> This Agreement may not be orally cancelled, changed, modified or amended, and no cancellation, change, modification or amendment shall be effective or binding, unless in writing and signed by the party to be charged.

(f)

(g) <u>Entire Agreement:</u> This Agreement constitutes the entire agreement between the parties regarding its subject matter. All prior understandings, representations,

14

agreements, written or oral, with respect to this Agreement, are hereby merged into and superseded by this Agreement.

(h) Headings: The paragraph headings contained in this Agreement are for convenience only, and do not define, limit or describe the scope or intent of said provision and shall not affect the meaning or interpretation of said provision.

(i) Parties Bound: This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and/or assigns.

(j) Further Assurances: In order to more fully assure the parties of the benefits of the transactions contemplated hereunder, each party hereto agrees to deliver to any other party hereto as such party may reasonably request such confirmations of fact, records, certificates, instruments, and other documents and things to otherwise carry out the transaction contemplated hereunder and the purpose and intent of this Agreement.

(k) Interpretation. The parties acknowledges and agree that: (a) each has retained independent counsel and reviewed and negotiated the terms and provisions of this Agreement and have contributed to its revision; (b) the rule of construction to the effect that any ambiguities are resolved against the drafting party shall not be employed in the interpretation of this Agreement; and (c) the terms and provisions of this Agreement shall be construed fairly as to all parties hereto and not in favor of or against any party, regardless of which party was generally responsible for the preparation of this Agreement.

(l) Survival: Provision 14 through 19 of this Agreement shall survive and continue to be in full force and effect after the termination of this Agreement.

(m) Counterparts. This Agreement may be signed in counterparts with the same effect as if the signatures thereto and hereto were upon the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by telecopier or electronic transmission (including in "PDF" or similar format) shall be effective and deemed as delivery of a manually executed original signature page hereto.

(n) Exculpation. Except as otherwise provided by the LLCL, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, will be solely the debts, obligations and liabilities of the Company, and no Member or Manager shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member, Manager or officer.

(o) Severability. If for any reason any provision of this Agreement is determined to be invalid, or unenforceable in any circumstance, such invalidity or unenforceability shall not impair the effectiveness of the other provisions in this Agreement or, to the extent permissible, the effectiveness of such provision in other circumstances.

(p) Third Party Beneficiaries. Nothing expressed or implied in this Agreement is intended or shall be construed, to confer upon or give any person, firm or

corporation other than the parties hereto, any rights, remedies, obligations or liabilities under or by reason of this Agreement, or result in their being deemed a third party beneficiary of this Agreement.

(q)     Waiver.  Neither the waiver by any of the parties hereto of a breach of or a default under any of the provisions of this Agreement, nor the failure of any of the parties, on one or more occasions, to enforce any of the provisions of this Agreement or to exercise any right or privilege hereunder, shall thereafter be construed as a waiver of any subsequent breach or default, or as a waiver of any such rights, privileges or provisions thereunder.

[SIGNATURES APPEAR ON NEXT PAGE]

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the day, date and year first above written.

_____
U O Management LLC

_____
Pinchas Halperin

_____
Yitzchak Kaminetzky, Manager

## SCHEDULE A

### Schedule of Services

- set up and operate a first class functional urgent care center;
- hire and direct staff;
- ensure facility is properly stocked with necessary materials;
- oversee and control all accounts receivables, payables and payroll;
- work with insurance companies towards achieving fair and equitable reimbursement;
- work with local doctors to use some space and refer patients;
- obtain and maintain proper insurance coverage; and
- provide marketing for location and work with Refiah Pharmacy on applicable advertisements;