UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

KAMIN HEALTH LLC,

    Plaintiff,

v.

PINCHAS HALPERIN and PINCHAS HALPERIN LLC,

    Defendants.

---

Case No.: 20 Civ. 5574

**Reply Memorandum of Law in Further Support of Plaintiff's
Motion for a Preliminary Injunction
and in Opposition to Defendants'
Cross-Motion to Compel Arbitration**

Date of service: January 26, 2021

POLLOCK COHEN LLP
60 Broad St., 24th Fl.
New York, NY 10004
(212) 337-5361

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.      A preliminary injunction is necessary and appropriate. .......................................... 2

           A.      Plaintiff will succeed on the merits. .............................................................. 2

                  i.      Plaintiff's marks are valid and merit protection. .............................. 2

                  ii.      Defendants' use of Plaintiff's marks is likely to cause consumer confusion. ......................................................................................... 4

           B.      Defendants' infringement is causing irreparable harm. ............................... 4

           C.      The "balance of hardships" weighs in favor of granting an injunction. ....... 5

           D.      There is no issue of "unclean hands". .......................................................... 5

    II.     Plaintiff is not a party to or otherwise bound by the arbitration provision Defendants invoke. .................................................................................................. 6

           A.      Defendants' estoppel theory does not apply. ............................................... 7

           B.      Defendants' agency theory also does not apply. ......................................... 9

           C.      A stay is not appropriate. ............................................................................ 10

CONCLUSION ............................................................................................................................. 11

## TABLE OF AUTHORITIES

**CASES**

*Belzberg v. Verus Invs. Holdings*,
    21 N.Y.3d 626 (2013) ......................................................................................................7, 8

*Bensadoun v. Jobe-Riat*,
    316 F.3d 171 (2d Cir. 2003) ...................................................................................................6

*Chen-Oster v. Goldman, Sachs & Co.*,
    449 F. Supp. 3d 216 (S.D.N.Y. 2020).....................................................................................6

*Coach, Inc. v. Kmart Corps.*,
    756 F. Supp. 2d 421 (S.D.N.Y. 2010).....................................................................................6

*D/S Norden A/S v. CHS de Paraguay, SRL*,
    2017 WL 473913 (S.D.N.Y. Feb. 3, 2017) .............................................................................9

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*,
    9 F.3d 1060 (2d Cir. 1993) .....................................................................................................8

*Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*,
    764 F.3d 210 (2d Cir. 2014) ...................................................................................................6

*Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.*,
    663 F.2d 4 (2d Cir. 1981) .....................................................................................................10

*Johnson & Johnson v. The Am. Nat. Red Cross*,
    552 F. Supp. 2d 434 (S.D.N.Y. 2008).....................................................................................2

*Katsoris v. WME IMG, LLC*,
    237 F. Supp. 3d 92 (S.D.N.Y. 2017).......................................................................................8

*Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*,
    13 F. Supp. 2d 430 (S.D.N.Y. 1998).......................................................................................6

*MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*,
    268 F.3d 58 (2d Cir. 2001) .....................................................................................................9

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*,
    337 F.3d 125 (2d Cir. 2003) .............................................................................................8, 10

*PAF S.r.l. v. Lisa Lighting Co.*,
    712 F. Supp. 394 (S.D.N.Y. 1989).........................................................................................3

*Thomson-CSF, S.A. v. Am. Arb. Ass'n*,
    64 F.3d 773 (2d Cir. 1995) ...................................................................................6, 7, 8, 10

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992) .................................................................................................................3

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
    800 F. Supp. 2d 515 (S.D.N.Y. 2011) ..................................................................................4, 5

**STATUTES**

Lanham Act § 43 ............................................................................................................................3

Plaintiff Kamin Health LLC ("Kamin Health") respectfully submits this reply memorandum of law in further support of its motion for a preliminary injunction (ECF no. 13), and in opposition to Defendants' cross-motion to compel arbitration (ECF nos. 19–20).[1]

## **PRELIMINARY STATEMENT**

Defendants' opposition papers effectively concede their unauthorized use of Plaintiff's trademarked materials, but ask this Court to turn a blind eye because it would be supposedly inconvenient to remove Plaintiff's logo and branding. While Defendants insist that they have no interest in using the Kamin brand, their intransigent refusal to fully remove it tells another story. And the manner in which Defendants are now using it – with portions removed or stickered over – actually exacerbates the harm caused by the infringement, creating the impression that the Williamsburg facility is a rundown Kamin operation, and further tarnishing the Kamin brand.

Defendants' attempt to change the subject with a lengthy diversion concerning Mr. Kaminetzky's supposedly unclean hands leaves out key facts, including that the business's allegedly "stolen" funds were actually deposited in the business's bank account at Chase Bank (as per the business's Operating Agreement). Regardless, these allegations have nothing to do with Plaintiff Kamin Health LLC's trademark rights and rights to an injunction.

Defendants' motion to compel arbitration is no more convincing. It effectively argues that Plaintiff – a non-signatory to the arbitration clause – can be bound to it because of affiliate relationships and conclusory assertions of agency, which are both approaches that the Second Circuit has repeatedly rejected. The Court should enter a preliminary injunction and deny Defendants' motion to compel arbitration.

---

[1] Defendants did not request a pre-motion conference before filing the motion to compel arbitration, as required by the Court's Individual Practice Rule III.A.1., even after the Court specifically reminded Defendants, on January 15, 2021, to adhere to the Court's practice rules.

## ARGUMENT

### I.  A preliminary injunction is necessary and appropriate.

Plaintiff has shown a likelihood of success on the merits, a likelihood of irreparable injury from Defendants' continued unauthorized use of the Kamin Health trademarks and branding in the absence of an injunction, that the balance of hardships tips in its favor, and that the public interest would be served by an injunction. ECF no. 13-1 ("Pl. Mem.").[2]

#### A.  Plaintiff will succeed on the merits.

Defendants' opposition takes issue with only two aspects of Plaintiff's showing that its claims are likely to succeed, arguing that the mark lacks distinctiveness and secondary meaning. Both arguments should fail.

*i.  Plaintiff's marks are valid and merit protection.*

The Kamin Health logo is inherently distinctive. It has a unique geometric shape and spacing that make it instantly recognizable, and is not simply a "red cross," ECF no. 20 ("Halperin Dec.") ¶ 45, as Defendants contend.[3]

 

(To the left, Plaintiff's logo; to the right, the Red Cross's logo.)

---

[2] Plaintiff is also submitting a reply Declaration from Mr. Kaminetzky, correcting the record on a variety of issues raised in Mr. Halperin's declaration.  As these details have little bearing on the issues before the Court, those facts are repeated here only to the extent relevant.

[3] It is telling that Defendants claim the "medical cross logo" is the "age-old symbol of every health care facility," when the Red Cross logo ("the emblem of the Greek Red Cross on a white ground") is actually one of the world's best-known trademarks. *See Johnson & Johnson v. The Am. Nat. Red Cross*, 552 F. Supp. 2d 434, 439 (S.D.N.Y. 2008).  If the red cross logo can be trademarked, surely Plaintiff's more stylized logo is sufficiently distinctive to merit protection.

- 2 -

Because Plaintiff's mark is distinctive (or "arbitrary" or "suggestive," as opposed to merely "descriptive") proof of secondary meaning is not required. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 776 (1992) (holding that "proof of secondary meaning is not required to prevail on a claim under § 43(a) of the Lanham Act where the trade dress at issue is inherently distinctive").

In any event, Plaintiff has submitted substantial evidence of secondary meaning, including that it has used the branding for years in connection with its businesses, and that it has invested and continues to invest significant time and resources in building its brand. Kaminetzky Reply Dec., sworn Jan. 26, 2021 ¶¶ 3–8 (detailing advertising and other marketing efforts); *see also* https://www.instagram.com/kaminhealth/; https://twitter.com/kaminhealth. Indeed, Defendants' attempt to trade on Plaintiff's branding is further evidence of secondary meaning. *PAF S.r.l. v. Lisa Lighting Co.*, 712 F. Supp. 394, 405 (S.D.N.Y. 1989) ("Proof of intentional copying is persuasive, if not conclusive evidence of secondary meaning.").

Further, Defendants' arguments that Plaintiff's mark is not distinctive and valuable are belied by their own position that supposedly "the purported trademark was the *only* 'contribution' that Kaminetzky made to KHW and, in exchange for the same, obtained a fifty percent interest in KHW." ECF no. 19-17 ("Opp."), at 5. Obviously, the marks are distinctive and have value, else Defendants would not have accepted them as, in their view, "the only contribution that Kaminetzky [actually U C Management] made" to the joint business. *Id*. Even more tellingly, Defendants claim to have apparently twice arranged for a "contractor" to remove pieces of the outside signage – first the small Kamin Health letters from the bottom right of the logo, then later two of the four arrows that are part of the Kamin Health logo – yet the logo remains on the building largely unchanged. Halperin Dec. ¶¶ 36–38. Why not ask the Contractor to remove the logo in its entirety, unless Defendants believe they benefit from continuing to use it? The removal

of only two of the four internal arrows – even after Plaintiff had specifically flagged this mark as protected – is particularly striking.

      ii.  *Defendants' use of Plaintiff's marks is likely to cause consumer confusion.*

Defendants' brief fails to even address the eight-factor *Polaroid* balancing test – presumably because every relevant factor favors an injunction. Pl. Mem. at 8–10. An injunction is appropriate upon a showing that confusion is likely. Here, Plaintiff has shown far more than mere likelihood – it cited two instances of actual consumer confusion.[4]

Confusion is inevitable because the trademarks and signage are not simply similar; they are identical. "Where a second-comer acts in bad faith and intentionally copies a trademark or trade dress, a presumption arises that the copier has succeeded in causing confusion." *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 538 (S.D.N.Y. 2011), *aff'd*, 511 F. App'x 81 (2d Cir. 2013). Defendants have done nothing to rebut this presumption, and provide no evidence that defacing Plaintiff's branded materials provides an effective solution.[5]

### B. Defendants' infringement is causing irreparable harm.

"Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark ... because loss of control over one's

---

[4] Given Defendants' strategy of removing the branded materials in a slow and piecemeal fashion, it would be unfair to require Plaintiff to make an additional showing of customer confusion for each iteration. In any event, a showing of actual confusion is not required, and Plaintiff has shown that confusion is very likely – Defendants are using the Plaintiff's branded materials, in the same location where a Kamin Health formerly operated, offering the same type of services.

[5] Pulling pieces off the signage and putting stickers on others doesn't mitigate the confusion. Instead, it simply adds to the harm by making the facility look rundown, contrary to the reputation Kamin has worked hard to develop. *See* https://www.kaminhealth.com/about-us/ ("Not … just another group of Urgent Care Centers, they decided to add many elements from their second business in Hospitality … into the 'Kāmin Health experience.' … Why are posh and inviting colors and award winning designs reserved only for Resorts and Country Clubs? Aside from providing the very best in medical equipment together with the most dedicated and caring medical and professional staff, we at Kāmin Health, we have broken these boundaries.").

reputation is neither 'calculable nor precisely compensable.'" *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 540–41 (S.D.N.Y. 2011), *aff'd*, 511 F. App'x 81 (2d Cir. 2013). Here, Plaintiff has clearly shown that unless Defendants are enjoined from using its branded materials, Plaintiff will lose control over the reputation of its trademarks. Defendants' slow and partial dismantling of the branded materials only heightens the likelihood of confusion and harm, by creating the impression that the Williamsburg facility is a run-down, badly maintained Kamin operation. *See* note 5, *supra*.

### C. The "balance of hardships" weighs in favor of granting an injunction.

Defendants' argument that it would be too much work for them to remove the infringing signs is not the type of harm that is relevant to this analysis. Hardship involves lost business opportunities that cannot be recovered and the like. If, as Defendants claim, they and their new tenants would prefer not to be associated with the Kamin Health brand, there is no cognizable hardship should the Court order them to remove it. An injunction will also serve the public's interest "in not being deceived." *U.S. Polo Ass'n, Inc.*, 800 F. Supp. 2d at 541.

### D. There is no issue of "unclean hands".

Without getting into the weeds of Defendants' alternate history, the main points that require correction are these: the funds that Kaminetzky allegedly "diverted" were not diverted at all—they were actually placed in the business's bank account at Chase as required by the business's operating account, and used to pay operating expenses of the business;[6] and the allegedly improper "assignment" relates to the appointment of a trustee in New York court

---

[6] As detailed in the accompanying Reply Declaration of Yitzchak Kaminetzky, as a result of an oversight, Mr. Halperin obtained an order that specified TD Bank. The business continued to use the business's bank account at Chase Bank, as referenced in the parties' operating agreement, and Mr. Kaminetzky sought to resolve the bank branch issue. A motion to vacate the TD Bank order is pending in New York State court.

insolvency proceeding. More saliently, none of these matters involve Plaintiff and none involve the rights at issue in this litigation. *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 429–30 (S.D.N.Y. 2010) ("it is 'well-settled' in trademark law that 'the defense of unclean hands applies only with respect to the right in suit.'"); *Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, 13 F. Supp. 2d 430, 445 (S.D.N.Y. 1998) (in evaluating whether the unclean hands doctrine applies, "what is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts." ) (citing 5 McCarthy § 31:51 ("Unclean hands must relate to the getting or using the alleged trademark rights.")).

## II. Plaintiff is not a party to or otherwise bound by the arbitration provision Defendants invoke.

Defendants have failed to show that Plaintiff is bound by any agreement to arbitrate, and the motion to compel should be denied.[7] The centerpiece of Defendants' motion is that Plaintiff is somehow bound by an arbitration clause in an Operating Agreement to which it is not a party. "[W]hile doubts concerning the scope of an arbitration clause [i.e. whether it covers the dispute at hand] should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210, 215 (2d Cir. 2014) (citation omitted). "A nonsignatory may not be bound to arbitrate except as dictated by some accepted theory under agency or contract law." *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 780 (2d Cir. 1995). The Second Circuit

---

[7] "Courts deciding motions to compel apply a standard similar to that applicable for a motion for summary judgment. The party moving to compel arbitration must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'" *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 240 (S.D.N.Y. 2020) (citations and internal quotations omitted). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citing 9 U.S.C. § 4).

has recognized five theories under which a court may bind a non-signatory to an arbitration agreement. *Id.* at 776. Defendants concede that three of them do not apply here, but argue that Plaintiff's claims are arbitrable under theories of "estoppel" or "agency." In fact, neither applies.[8]

### A. Defendants' estoppel theory does not apply.

Defendants offer two estoppel theories. Under the first, "the direct benefits theory of estoppel, a nonsignatory may be compelled to arbitrate where the nonsignatory 'knowingly exploits' the benefits of an agreement containing an arbitration clause, and receives benefits flowing directly from the agreement." *Belzberg v. Verus Invs. Holdings*, 21 N.Y.3d 626, 631 (2013).

Defendants argue that Mr. Kaminetzky – the individual – received benefits from the Operating Agreement, and therefore Plaintiff Kamin Health LLC "accepted the benefits of the agreement (i.e., a fifty-percent interest given to its President)." Opp. at 5. This position is contrary to the Operating Agreement, which plainly grants a 50% membership interest in the business to "U C Management LLC," and not Mr. Kaminetzky, and not to Plaintiff Kamin Health LLC. *See* ECF no. 19-2 ("Op. Agr."), at 3. Even if the Court accepted Defendants' counterfactual assertion that Mr. Kaminetzky was a beneficiary of the Operating Agreement, a benefit conferred on a member of an LLC is not a benefit conferred on the LLC itself. *Cf. Belzberg*, 21 N.Y.3d at 634 (non-signatory could not be compelled to arbitrate where the alleged benefit – that he "directed … profits to his friend" – was not a direct benefit flowing from the agreement; though he may have directed them, the profits never belonged to the non-signatory).

Only a benefit directly flowing from the agreement and knowingly accepted can bind a

---

[8] Even if Plaintiff had been a party to the arbitration agreement, the current dispute still would not fall within the scope of the Operating Agreement's arbitration clause. Plaintiff's claims have nothing to do with the Operating Agreement or the Williamsburg LLC. Quite simply, the business is closed and yet the marks are now being used at the premises of the former business. Some lines must be drawn, even when an arbitration clause is broadly drafted.

- 7 -

non-party to an arbitration clause. *Id.* at 633 ("The guiding principle is whether the benefit gained by the nonsignatory is one that can be traced directly to the agreement containing the arbitration clause."); *Thomson-CSF*, 64 F.3d at 779 (party receiving an indirect benefit, not directly flowing from the agreement with the arbitration clause, cannot be compelled to arbitrate).

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060 (2d Cir. 1993), cited by Defendants, exemplifies what is required for this type of estoppel. There, a non-signatory knowingly accepted the benefits of an agreement in order to use the trade name "Deloitte"; thus the non-signatory was bound by the arbitration clause in that license agreement, even though not a party. Here, in contrast, Defendants cannot show *any* benefit to Plaintiff flowing from the Operating Agreement – much less a direct benefit knowingly accepted by Plaintiff, so the benefits theory of estoppel cannot apply. *See, e.g.*, *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 108–09 (S.D.N.Y. 2017) (alleged benefit was indirect because nonsignatory "could not have obtained this benefit by invoking any rights under the agreement").

Defendants' second estoppel theory fares no better. The "inextricably intertwined" version of estoppel is available exclusively to non-signatories who seek to compel arbitration with a signatory. It cannot be used to force a non-signatory into arbitration. As the Second Circuit has explained:

> That first distinction … is decisive; it matters whether the party resisting arbitration is a signatory or not. A court should be wary of imposing a contractual obligation to arbitrate on a non-contracting party.... A willing non-signatory seeking to arbitrate with a signatory that is unwilling may do so under what has been called an 'alternative estoppel theory,' which takes into consideration the relationships of persons, wrongs and issues. But a willing signatory … seeking to arbitrate with a non-signatory that is unwilling … must establish at least one of the five theories described in *Thomson–CSF*, 64 F.3d at 776–80.

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 131 (2d Cir. 2003) (cleaned up). Defendants gloss right over this issue, but it is fatal to their estoppel theory. *Id.*; *see also MAG*

- 8 -

*Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 62 (2d Cir. 2001) (holding that "a signatory may not estop a nonsignatory from avoiding arbitration regardless of how closely affiliated that nonsignatory is with another signing party.").[9]

### B.  Defendants' agency theory also does not apply.

Defendants next argue that if Mr. Kaminetzky was authorized to "bind Plaintiff to a licensing agreement, he was also clearly also [sic] authorized to bind it to an arbitration provision therein, which he did." Opp. at 9. Again, no facts support Defendants' position. No facts support the concept that the Williamsburg LLC was acting as an agent for Plaintiff, nor do any facts indicate that Plaintiff assented to be bound by the agreement's arbitration provision.[10]

Defendants' argument—about U C Management's action in contributing the trademark—falls far short of what is required to show an agency relationship. *See, e.g.*, *D/S Norden A/S v. CHS de Paraguay, SRL*, 2017 WL 473913, at *3–4 (S.D.N.Y. Feb. 3, 2017) (holding that "an undisclosed agency relationship" could not be shown through conclusory allegations that one "was acting as the agent for [the other] as an undisclosed principal," "affiliate status, [and] ownership and control" or "unelaborated assertions that [the nonsignatory] and [the affiliated signatory] 'agreed' to an agency relationship and that '[the signatory] acted pursuant to the

---

[9] Given that this theory clearly cannot be used to compel Plaintiff – a nonsignatory – to arbitrate, the Court need not consider whether Plaintiff's claims are intertwined with the Operating Agreement. In any event, they are not. Plaintiff does not rely on the Operating Agreement to establish its claims. Plaintiff owns the trademarks at issue, Defendants are using them without authorization, and that is causing Plaintiff damage.

[10] Defendants cannot remedy this deficiency by re-labeling the 18-page Operating Agreement as a "Licensing Agreement." The Operating Agreement simply states that U C Management "shall contribute the license to the use of the brand name 'Kamin Health' by the LLC, at no cost," ECF No. 19-2 § 8, which it did. Notably, there is no representation that U C Management itself owned the trademark, or any specific license granted in the Operating Agreement, which simply says that U C Management would procure the license to use the brand name, and that it would be "at no cost."

instructions and control of the non-signatory affiliate]"); *Thomson–CSF*, 64 F.3d at 780 (courts must take care not to "dilute[] the safeguards afforded to a nonsignatory by the 'ordinary principles of contract and agency,'" or fail[] to adequately protect parent companies, the subsidiaries of which have entered into arbitration agreements").[11]

The cases cited by Defendants do not hold otherwise. For instance, in *Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.*, 663 F.2d 4 (2d Cir. 1981), there was substantial documentary evidence concerning an agency relationship, including a telex, several affidavits, and an assignment of rights, which together were sufficient to raise a genuine issue of fact as to agency.

### C. A stay is not appropriate.

For these reasons, the Court also should not stay this matter pending arbitration. Plaintiff's claims against Defendants cannot be resolved in a proceeding to which it is not a party. The religious tribunal is addressing various business disputes not involving Plaintiff, and none of those disputes relate to the validity of Plaintiff's trademarks and Defendants' unauthorized use of them. *See* Kaminetzky Reply Dec.[12]

---

[11] *See also Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 130–31 (2d Cir. 2003) (holding that an agency relationship is not established simply by showing an "affiliate relationship and … various corporate relationships among [entities]," and an entity does not act as agent for another in signing an arbitration clause simply because both entities are "owned and controlled" by an affiliate; "officers also serve as officers of" affiliates; the company "markets the services of the entire … family of companies to clients; or "that the … companies present to the public the image of a single, integrated firm.").

[12] Defendants' footnote concerning Jewish law (Opp. at 9 fn. 6) has no bearing on this analysis. If anything, it only serves to emphasize the absence of anything in the Operating Agreement intended to "apply to any entity that the parties were involved with," as Defendants now broadly claim, Opp. at 9 fn.6, and Defendants' failure to conduct any inquiry into who owned the trademarked materials. *Cf.* ECF No. 19-2 (Operating Agreement) § 19(i) (explicitly stating that it is binding on "heirs, successors, assigns," etc., but silent as to affiliates, parents or other entity that the parties were involved with," as Defendants would have it; *see also id.* § 19(j) (agreeing to deliver any "reasonably request[ed] … confirmations of fact").

## **CONCLUSION**

For the reasons herein, we respectfully submit that this Court should grant Plaintiff's motion for a preliminary injunction and deny Defendants' cross motion to compel arbitration.

Dated: January 26, 2021

                                          Respectfully submitted,

                                          POLLOCK COHEN LLP

                                          By: /s/ *Adam Pollock*
                                                Adam Pollock
                                          60 Broad Street, 24th Floor
                                          New York, NY 10004
                                          Adam@PollockCohen.com
                                          Tel: (212) 337-5361

                                          *Attorneys for Plaintiff*